Curt DANIELSON, Appellant,

v.

NATIONAL SUPPLY COMPANY, a
division of Affinity Group, d/b/a
Camping World, Respondent.

No. A03–325.

Court of Appeals of Minnesota.

Oct. 14, 2003.

Kevin S. Carpenter, Carpenter Injury Law Office, St. Cloud, MN, for appellant.

Gordon H. Hansmeier, Sarah L. Smith, Rajkowski Hansmeier Ltd., St. Cloud, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge, PETERSON, Judge, and MINGE, Judge.

## OPINION

MINGE, Judge.

Appellant, a Minnesota resident, sued respondent retailer in Minnesota for injuries suffered in Arizona while using a ladder purchased from a store of respondent in Texas. The district court dismissed appellant's claim on the grounds that it was time barred under the law of both of the other states and the doctrine of forum non conveniens. Because the district court should have applied Minnesota's statute of limitations, and because the doctrine of forum non conveniens does not support dismissal, we reverse.

## FACTS

Appellant Danielson is a Minnesota resident and operates a contracting business in this state during part of the year. He

also spends approximately half the year traveling in a motor home in the southern part of the United States. In early 2000, Danielson bought a stepladder from respondent's Camping World store in Mission, Texas. On February 13, 2000, Danielson was using the ladder in Arizona when he fell and injured his foot. Danielson believed the ladder was defective and eventually returned it to Camping World in Mission, Texas. Danielson received medical treatment in Arizona and Minnesota but did not fully recover from his injuries and sought compensation. When Danielson determined that both the manufacturer and distributor of the ladder had gone out of business, he filed suit against Camping World in Minnesota.

Camping World is the trade name used by National Supply Company, a division of the Affinity Group, Inc., a Delaware corporation with its principal offices in Colorado. The Camping World division has its principal office in Kentucky, and stores in many states, including at least one store in Texas and one store in Minnesota. It has a registered agent for service of process in Minnesota. The record is silent as to whether Camping World has a store in Arizona or is otherwise amenable to jurisdiction in that state. Danielson claims he patronized the Texas Camping World store because he had visited its Minnesota store and preferred to do business with a familiar firm.

Camping World does not dispute that Danielson purchased the ladder at its Mission, Texas store. Nor does Camping World dispute that Danielson returned the ladder to that store. However, the record indicates that Camping World has not been able to identify the employees who sold the ladder to Danielson or who dealt with him when he returned the ladder.

Danielson's injury occurred on February 13, 2000, and he did not commence this action until after February 13, 2002. Because the statutes of limitation in Texas and Arizona are two years, the statutes of limitation in those states have already run. But the applicable statute of limitations in Minnesota is six years.

Camping World moved to dismiss Danielson's claim as time barred under either Texas or Arizona law and forum non conveniens. The district court ruled that Texas or Arizona law applied and that accordingly, Danielson's claim was time barred. The district court also dismissed Danielson's claim on the ground of forum non conveniens. Danielson argues that Minnesota law applies, that his claim is therefore timely, and that the claim should not have been dismissed on the ground of forum non conveniens.

## ISSUES

1. Does Minnesota's statute of limitations apply to a product-liability claim brought in Minnesota by a Minnesota resident for injuries occurring in a second state for a product purchased in a third state?

2. Was it an abuse of discretion for the district court to dismiss this action on the ground of forum non conveniens?

## ANALYSIS

### I.

### CHOICE OF LAW

■ We first decide whether the district court erred by not applying the Minnesota statute of limitations. We treat choice-of-law questions as questions of law and review them de novo. *See Reed v. Univ. of N.D.*, 543 N.W.2d 106, 107–08 (Minn.App. 1996) (framing issue as whether district court erred in its choice-of-law analysis).

Traditionally when a conflict-of-law issue arises, the preliminary step is to decide whether the question is substantive or procedural. If the matter is one of substantive law, Minnesota applies a multi-step choice-of-law analysis, which includes application of five choice-influencing considerations, to determine which state's law applies. *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn.1994). This analysis was initially adopted in *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (1973). On the other hand, if the matter is one of procedural law, Minnesota follows the "almost universal rule that matters of procedure and remedies [are] governed by the law of the forum state." *Davis v. Furlong*, 328 N.W.2d 150, 153 (Minn.1983) (citation omitted).

Here the matter involves conflicting statutes of limitations. Thus, we must decide both whether Minnesota follows the substantive/procedural distinction with respect to statutes of limitation and if so, whether a statute of limitations is procedural or substantive. The Restatement (Second) of Conflict of Laws speaks to part of this issue noting that traditionally, "the courts usually characterized statutes of limitation as procedural." Restatement (Second) of Conflict of Laws § 142 cmt. e (1971). However, the Restatement observes that courts

> no longer characterize the issue of limitations as ipso facto procedural and hence governed by the law of the forum. Instead, the courts select the state whose law will be applied to the issue of limitations by a process essentially similar to that used in the case of other issues of choice of law.

*Id.*

### A. Statutes of Limitation as Procedural Approach

There is some ambiguity as to what approach Minnesota follows. In 1940, the Minnesota Supreme Court took the approach that statutes of limitation are procedural. *In re Daniel's Estate*, 208 Minn. 420, 427, 294 N.W. 465, 469 (1940). The Minnesota Supreme Court took the same approach in 1963. *Am. Mut. Liab. Ins. Co. v. Reed Cleaners*, 265 Minn. 503, 506 n. 1, 122 N.W.2d 178, 180 n. 1 (1963). And this court followed that approach in 1989. *United States Leasing Co. v. Biba Info. Processing Servs., Inc.*, 436 N.W.2d 823, 825 (Minn.App.1989), *review denied* (Minn. May 24, 1989).

But Minnesota has not been consistent. In 1974, the Minnesota Supreme Court applied the modern approach in deciding whether to apply Minnesota's statute of limitations. *Myers v. Gov't Employees Ins. Co.*, 302 Minn. 359, 363–64, 225 N.W.2d 238, 241 (1974). In *Myers*, the plaintiffs were residents of Minnesota and were involved in an automobile accident in Louisiana. *Id.* at 360–61, 225 N.W.2d at 240. The plaintiffs sued the defendant insurance company in Minnesota, seeking to apply Louisiana's direct action statute. *Id.* Had they brought their claim in Louisiana, it would have been barred by Louisiana's one-year statute of limitations. *Id.* Under Minnesota's statute of limitations, their claim was timely. *Id.* The Minnesota Supreme Court addressed whether the Louisiana direct action statute created a substantive right, then applied choice-of-law analysis to determine that the Louisiana direct action statute should apply and that the Minnesota statute of limitations should apply. *Id.* at 363–64, 225 N.W.2d at 241–243. In so doing, the court analyzed both the direct action statute and the statute of limitations issues under the five choice-influencing considerations set forth in *Milkovich*. *Id.* The court in *Myers* did not cite, much less purport to overrule, the traditional rule that statutes of limitation

are procedural and are governed by the law of the forum.

Although the Minnesota Supreme Court has not directly revisited the statute of limitations issue since the decision in *Myers*, in 1983 it referenced the *Myers* decision in a footnote. *Davis*, 328 N.W.2d at 152 n. 2. The *Davis* court declined to recognize any exception to the rule that matters of procedure are governed by the law of the forum. *Id.* at 153.[1] The *Myers* decision is also called into question by a more recent case, which, in the context of forum non conveniens, characterized statutes of limitation as procedural. *Kennecott Holdings Corp. v. Liberty Mut. Ins. Co.*, 578 N.W.2d 358, 361 n. 7 (Minn.1998).

 Under the cases of *American Mutual* and *In re Daniel's Estate*, the statutes of limitation are procedural.[2] *Am. Mut.*, 265 Minn. at 506 n. 1, 122 N.W.2d at 180 n. 1; *In re Daniel's Estate*, 208 Minn. at 427, 294 N.W. at 469. And since the law of the forum governs procedural issues, we would apply the Minnesota statute of limitations in this case. Pursuant to this analysis, appellant's claim is timely because it was filed before the end of Minnesota's six-year statute of limitations.

## B. *Choice–Influencing Consideration Approach*

It appears from the Restatement that courts are increasingly recognizing that the statute of limitations is outcome determinative, that it may be inappropriate to use the procedural classification, and that determining what statute of limitations is to be applied should be decided the same as substantive law conflicts generally. Restatement (Second) of Conflict of Laws § 142 cmt. e. Because Minnesota has shown some inclination to apply the choice-influencing considerations analysis, we will also apply that analysis to this case.

 The threshold stage in the choice-influencing consideration analysis is to establish that there actually is a true conflict of laws and that more than one state's law may be constitutionally applied. Neither question is at issue in this case. The next stage in this analysis is to apply five choice-influencing considerations: (1) predictability of result; (2) maintenance of interstate order; (3) simplification of judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Jepson*, 513 N.W.2d at 470. The law in Minnesota is not clear on whether the court must consider all five choice-influencing considerations in a tort case. In 1995, the eighth

---

1. The Davis court also cited *Cuthbertson v. Uhley*, a federal case, for the proposition that the law of the forum governs procedural issues and noted that though *Cuthbertson* was not precedential, it was "undoubtedly correct." *Id.* at 152 (citing *Cuthbertson v. Uhley*, 509 F.2d 225 (8th Cir.1975)). In addition to finding that the procedural law of the forum applies, *Cuthbertson* also specifically found that statutes of limitation are procedural in Minnesota. *Cuthbertson*, 509 F.2d at 226. *Cuthbertson* was decided after *Myers*, but it made no mention of *Myers* or of the modern approach taken in *Myers*. *Id.*

2. Even under this traditional approach, there are exceptions to the rule that statutes of

limitation are always procedural. A limitation period is substantive when it applies to a right created by statute, as opposed to a right recognized at common law. *Fredin v. Sharp*, 176 F.R.D. 304, 308–09 (D.Minn.1997) (citing *In re Daniel's Estate*, 208 Minn. at 430, 294 N.W. at 470). Where the limitation period is from the statute creating the right, the limitation period is a condition of the right rather than as an actual statute of limitations. *Id.* The limitations period here is the statute of limitations for general tort actions; it is not a limitation period from a specific statute that creates appellant's right to sue. Accordingly, this exception does not apply.

circuit noted that some Minnesota opinions addressing choice of law in tort cases

> skip the analysis of ... the first three considerations.... But the Minnesota Court of Appeals as recently as September 1994 considered all five factors (the first to a lesser degree) in a tort case, noting only that "[t]ort actions generally do not implicate party expectations" and discussing the remaining factors at some length.

*Nesladek v. Ford Motor Co.,* 46 F.3d 734, 738–39 (8th Cir.1995) (citing *Lommen v. City of East Grand Forks,* 522 N.W.2d 148, 150–53 (Minn.App.1994)). Although this court more recently said that "only the last two elements of the five-point methodology for resolving conflict questions are relevant to tort cases" *Boatwright v. Budak,* 625 N.W.2d 483, 489 (Minn.App.2001), *review denied* (Minn. July 24, 2001), in the interest of thoroughness, we will analyze all five factors.

### 1. Predictability of Result

■ This factor addresses whether the choice of law was predictable *before* the time of the transaction or event giving rise to the cause of action. In *Jepson,* the court noted that "[p]redictability of result as it relates to the tort aspect of a case is not of great importance ... because of the unplanned nature of ... accidents." *Jepson,* 513 N.W.2d at 470 (citations omitted). Rather, this factor applies "primarily to consensual transactions where the parties desire advance notice of which state law will govern in future disputes." *Medtronic, Inc. v. Advanced Bionics Corp.,* 630

N.W.2d 438, 454 (Minn.App.2001) (citation omitted).

■ There is nothing in the record to indicate that this was a transaction where the parties desired advance notice of what state law would apply in a future dispute. Danielson points out that he bought the ladder from Camping World because he was familiar with Camping World's Minnesota store. That familiarity with the name of the store, does not, however, constitute an expectation that Minnesota law would govern any future disputes. Danielson cannot point to a legitimate expectation that he thought Minnesota law would apply before he was injured while using the ladder.[3] Accordingly, this factor does not favor any of the forums in this case.

We do note, however, that this factor could have relevance in certain tort cases. For example, if a person or business designs its insurance coverage, insurance rates, or record retention policy based on the expectation that a particular state's statute of limitations would apply to claims, predictability of result may be important. That argument has not been raised in this case, so it does not affect our decision.

### 2. Maintenance of Interstate Order

■ This factor addresses whether the application of Minnesota law would manifest disrespect for Arizona or Texas or impede the interstate movement of people and goods. *Jepson,* 513 N.W.2d at 471. Evidence of forum shopping or evidence that application of one state's law would promote forum shopping would be an at-

3. We note that a Minnesota claimant may postpone commencing a lawsuit assuming the Minnesota six-year statute of limitations applies and then discover to his surprise that a shorter statute of another state bars his action. This may have occurred in Danielson's case. However, this "predictability" factor is generally understood to apply to expectations prior to the injury, not to expectations occurring later. *See Medtronic,* 630 N.W.2d at 454 (noting that the predictability factor applies primarily when parties desire *"advance* notice of which state law will govern in *future* disputes" (emphasis added)).

tempt to evade and would indicate disrespect for Arizona or Texas law. *See id.* In addition, "[m]aintenance of interstate order [in tort cases] is generally satisfied as long as the state whose laws are purportedly in conflict has sufficient contacts with and interest in the facts and issues being litigated." *Myers*, 302 Minn. at 365, 225 N.W.2d at 242.

▪ Here, all three possible forums have statutes of limitations. Applying Minnesota's six-year statute of limitations would indicate disrespect for Texas and Arizona, and applying their two-year statute of limitations would indicate disrespect for Minnesota. Thus, this factor may not favor any of the three forums. *Compare Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 95 (Minn.2000) (concluding maintenance of interstate order was neutral because "both states have an equal interest as evidenced by the fact that both have laws directly pertaining to no-fault benefits recovery on the present facts"), *with State Farm Mut. Auto. Ins. Co. v. Great West Cas. Co.*, 615 N.W.2d 871, 873 (Minn.App.2000) (finding that maintenance of interstate order favored application of Minnesota law because "Nevada does not have a no-fault act; therefore, Minnesota is not interfering with any Nevada law"). This factor is neutral.

### 3. Simplification of Judicial Task

▪ This factor is not particularly relevant where the competing laws are straightforward and the courts' interpretations of them are adequate "to provide the guidance a trial court might wish to have." *Nesladek*, 46 F.3d at 739; *see also Jepson*, 513 N.W.2d at 472 (finding that "simplification of the judicial task is not a significant factor in this case because the law of either state could be applied without difficulty"). This factor could be relevant if parties were arguing about the nuances of

the statutes of limitation of competing states. In that case, the forum state would have the burden of deciphering the intricacies of another state's statute of limitations.

▪ Here the parties seem to agree that all three statutes of limitations are quite clear and easy to apply. Accordingly, this factor does not favor any of the forums. *See Nodak*, 604 N.W.2d at 95 (finding that because "the conflicting laws at issue are relatively clear in that there is no dispute that recovery is allowed under one but not the other, this factor favors neither state's law").

### 4. Advancement of the Forum's Governmental Interest

▪ This factor goes to which law would "most effectively advance a 'significant interest of the forum' state." *Medtronic*, 630 N.W.2d at 455 (quoting *Jepson*, 513 N.W.2d at 472). This factor is designed to assure that Minnesota courts do not have to apply rules of law that are "inconsistent with Minnesota's concept of fairness and equity." *Id.* (quotation omitted). In considering which law will advance the governmental interest of Minnesota, the court is to consider the public policy of both (or in this case, all three) forums. *Lommen*, 522 N.W.2d at 152.

▪ By using a shorter limitation period, Texas and Arizona are limiting stale claims and problems of proof, surprise, or abuse of the legal system that may be associated with stale claims. The overriding Minnesota interest is compensating tort victims. "Minnesota places great value in compensating tort victims. We have even refused to apply our law when the law of another state would better serve to compensate a tort victim." *Jepson*, 513 N.W.2d at 472. Minnesota places an interest in "permitting its citizens access to [its]

courts...." *Myers*, 225 N.W.2d at 243. By compensating tort victims, we reduce the chance that injured persons will be forced to seek public assistance as a result of their injuries. Compensating tort victims also reduces the risk that Minnesota medical providers will go unpaid for their services. In addition, Minnesota has an interest in promoting responsibility of sellers and producers. Application of either Texas or Arizona law would result in Danielson not being compensated and would reduce the responsibility of sellers and producers for the products they place into the stream of commerce. Minnesota's interests favor application of the Minnesota statute of limitations.

### 5. The Better Rule of Law

This factor should be addressed when the other factors are not conclusive as to which state's law should be applied. *Medtronic*, 630 N.W.2d at 456–57; *Reed*, 543 N.W.2d at 109. As noted above, factors one, two, and three are neutral in this case. Although factor four (advancement of forum's governmental interest) favors application of Minnesota law, some consideration of which state has the better rule of law is appropriate.

▮▮▮ The better rule of law is "the rule that made 'good socio-economic sense for the time when the court speaks.'" *Jepson*, 513 N.W.2d at 473 (quoting Robert A. Leflar, *Conflicts Law: More on Choice–Influencing Considerations*, 54 Calif. L.Rev. 1584, 1588 (1966)). It is impermissible to find that the law of the forum is the better rule of law only because the legislature enacted that law. If that were allowed, "forum law would always be the better law and this step in our choice of law analysis would be meaningless." *Jepson*, 513 N.W.2d at 473.

As we already noted, compensation of tort victims has far-reaching effects, such as avoiding victim reliance on public assistance, restoring injured parties to good health, paying healthcare providers and holding parties responsible for the products they make or sell. We assume that Texas and Arizona wish to prevent stale claims and reduce liability exposure. Although these policies are both supported by strong considerations, it appears this state's supreme court has identified fair compensation as the better policy. *See Jepson*, 513 N.W.2d at 472–73. This policy is better promoted by the six-year statute of limitations. In this sense, Minnesota has the better rule of law, and the Minnesota statute of limitations law should be applied.

▮▮▮ The district court erred in not using Minnesota's six-year statute of limitations. Both the approach which classifies the statute of limitations as procedural and the choice-influencing consideration analysis support this conclusion. Because our supreme court generally favors use of the choice-influencing consideration analysis and because of the shift to this choice of law approach, we follow § 142 of the Restatement, which applies the choice-influencing consideration analysis to statute of limitations conflicts.

## II.

### FORUM NON CONVENIENS

▮▮▮ We next decide whether the district court abused its discretion by dismissing Danielson's case on the grounds of forum non conveniens. Dismissal of a case on the grounds of forum non conveniens may be appropriate when "the exercise of personal jurisdiction imposes a hardship that does not rise to the level of a due process violation...." *Rykoff–Sexton, Inc. v. Am. Appraisal Assocs., Inc.*, 469 N.W.2d 88, 91 (Minn.1991). The district court exercises broad discretion in decid-

ing whether to dismiss an action on the grounds of forum non conveniens, and we will not reverse the district court's decision unless we find that there has been an abuse of discretion. *Bergquist v. Medtronic, Inc.*, 379 N.W.2d 508, 511 (Minn. 1986).

In *Bergquist*, the Minnesota Supreme Court adopted the rule set forth in the United States Supreme Court case of *Piper Aircraft Co. v. Reyno* for Minnesota forum non conveniens cases. *Id.* at 512 (adopting rule of *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). In *Piper Aircraft*, the Supreme Court stated "where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id.* at 257, 102 S.Ct. at 266 (citations omitted). In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055, the Supreme Court enumerated both public and private factors to be considered in deciding whether a forum was appropriate. The court stated:

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcability [sic] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.

*Id.* at 508, 67 S.Ct. at 843. The court also discussed public factors to consider, stating:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* at 508–09, 67 S.Ct. at 843.

In this case, the district court found:

> There are no contacts with the state of Minnesota other than the fact that [Danielson] lives here about half of the year and [Camping World] has one store in Rogers, Minnesota. The sale and return of the ladder took place in Texas. The alleged injury took place in Arizona. Most of the potential witnesses are in Arizona or Texas. Therefore, the hardships of trying this case in Minnesota warrant a dismissal by forum non conveniens.

However, there is nothing in the record of this case to indicate that Arizona courts would have jurisdiction over Camping World. Therefore, in determining whether the district court abused its discretion by finding that Minnesota is not a convenient forum, we consider Minnesota and Texas.

 Texas is where the ladder was purchased and returned. At this stage it appears that the only possible witnesses in Texas would be the employees involved in those events. Camping World cannot or has not identified those employees. In

any event, the purchase and return of the ladder to Camping World's Mission, Texas store is not in dispute. On the other hand, there are witnesses in Minnesota. Danielson resides in Minnesota. Healthcare providers in Minnesota who have worked with Danielson may need to testify about the nature of Danielson's injuries.

Camping World has not identified any experts who would testify on its behalf. The record indicates that Danielson has retained an expert based in Arkansas. It would be just as easy for this expert to travel to Minnesota as to Texas. In addition, Camping World is a national company with stores in many states, including Minnesota. Its headquarters are in Kentucky, it is part of a Delaware corporation based in Colorado, and the ladder in question was manufactured in Missouri.

There is no ideal forum. Minnesota has a legitimate tie to this case, and it was an abuse of discretion for the district court to dismiss Danielson's claim on the ground of forum non conveniens.

## DECISION

We reverse the grant of summary judgment in favor of Camping World and remand for further proceedings. Minnesota's six-year statute of limitations applies to Danielson's claim both under the traditional rule that would treat the choice of law determination as procedural and under the better approach that would determine the statute of limitations by analysis of choice-influencing considerations. It was an abuse of discretion to dismiss Danielson's case for forum non conveniens.

**Reversed and remanded.**